**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **TREVOR MILLER,** | : | **CIVIL ACTION NO.** |
| **Movant,** | : | **1:10-CV-3875-CAP-AJB** |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO.** |
| | : | **1:07-CR-128-CAP-AJB-1** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **MOTION TO VACATE** |
| **Respondent.** | : | **28 U.S.C. § 2255** |

**ORDER FOR SERVICE OF REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE'S**

The Report and Recommendation of the United States Magistrate Judge, made

in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Rule 72, is attached.

The same shall be filed and a copy, together with a copy of this Order, shall be served

upon the parties and upon any unrepresented parties.

Pursuant to 28 U.S.C. § 636(b)(1)(C), within fourteen (14) days of service of this

Order, each party may file written objections, if any, to the Report and

Recommendation.  If objections are filed, they shall specify with particularity the

alleged error or errors made (including reference by page number to the transcript if

applicable) and shall be served upon the opposing party.  The party filing objections

will be responsible for obtaining and filing the transcript of any evidentiary hearing for

review by the District Court.    If  no  objections  are  filed,  the  Report  and

Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Judge after expiration of the above time period.

**IT IS SO ORDERED**, this 30th day of September, 2011.

**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **TREVOR MILLER,** | : | **CIVIL ACTION NO.** |
| **Movant,** | : | **1:10-CV-3875-CAP-AJB** |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO.** |
| | : | **1:07-CR-128-CAP-AJB-1** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **MOTION TO VACATE** |
| **Respondent.** | : | **28 U.S.C. § 2255** |

## UNITED STATES MAGISTRATE JUDGE'S
## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant's motion to vacate sentence under 28 U.S.C. § 2255 is pending before the Court. [Doc. 278.][1] Movant, *pro se*, challenges his convictions and sentence in this Court for drug and firearm offenses. Respondent opposes the motion. [Doc. 283.] Movant has filed a motion for leave to file a late reply to Respondent's opposition, [Doc. 285], and the Court **GRANTS** that motion *nunc pro tunc*. For the reasons discussed below, the undersigned **RECOMMENDS** that the Court deny the § 2255 motion and deny Movant a certificate of appealability.

## I.    Background

In May 2009, a jury in this Court convicted Movant of conspiracy to possess at

---

[1]      Unless otherwise indicated, all citations to the record in this Report and Recommendation refer to criminal action number 1:07-CR-128-CAP-AJB.

least 500 grams of cocaine with intent to distribute it, conspiracy to import cocaine into the United States, and possession of a firearm in furtherance of a drug crime. [Doc. 205.]  The crimes involved Movant hiring women to smuggle cocaine into the United States from the Caribbean by hiding the drugs inside their bodies.  Movant operated his drug operation out of Florida, but the women traveled through Atlanta and other cities on their trips to and from other countries.  Movant used other women to assist him with the drug operation in Florida.

Respondent presented twenty-two witnesses at trial.  [Trial Transcript ("Trial Tr.") at 2, 161.][2]  Those witnesses included agents with the U.S. Customs and Border Patrol, Immigration and Customs Enforcement, and Drug Enforcement Agency.  [*Id.*] They also included individuals directly involved in the drug conspiracies, including Tiquila Turner, India Manning, Tarleshia Brinson, and Tanya Micklitshch.  [*Id.*] Respondent also presented documentary evidence of the numerous actions Movant and his co-conspirators took in furtherance of the drug operation, as well as audio and video recordings of Movant's incriminating discussions with his family while he was in jail.  [*Id.* at 375-410.]  Those jailhouse discussions led to the discovery of money and a firearm that were fruits of the crimes.  [*Id.* at 391-410.]  Movant presented no

---

[2]     The transcript of the trial is in the record at docket entries 229 - 231.

2

witnesses in his defense.

Attorney Martin Cowen represented Movant in pre-trial proceedings, at trial, and on appeal. [Doc. 278 at 7.] Before trial, Cowen filed several motions in limine, including one to prevent Respondent from referencing or introducing any evidence at trial regarding Movant's 1989 conviction in England of murder using a firearm and his arrest for rape. [Docs. 124, 125, 126, 128.] Respondent notified Movant before trial that it intended to present those crimes at trial as evidence of prior bad acts under Federal Rule of Evidence 404(b). The Court held a hearing on Movant's motions in limine on April 21, 2009, one month before trial. [Doc. 234.] Respondent agreed not to reference or present any evidence at trial of Movant's rape charge and agreed not to present any evidence of Movant's murder conviction except for the testimony of a co-conspirator who would testify that Movant told her he had a murder conviction in an effort to protect the viability and secrecy of the drug operation. [*Id.*] The Court denied Movant's motion in limine regarding his murder conviction, ruling that Movant's statement to his co-conspirator was admissible as an admission by a party opponent and a co-conspirator under Federal Rule of Evidence 801(d)(2). [Doc. 145.]

At trial, Turner, one of the women who transported cocaine inside her body into the United States for Movant and a convicted co-conspirator, testified as follows during

3

Respondent's direct examination of her:

> Q. Can you explain to the jury anything that happened to you when you went into the residence of Trevor Miller?

> A. I went to take some [cocaine] pellets that I had passed, and when I entered the residence, I seen a gun on the couch, and I said, "Oh, gun," and he removed it and put it up.

> Q. Showing you what's been marked as government's exhibit number 81-H. Does that gun look like the type of gun that you saw in the residence of this defendant, Trevor Miller?

> A. Yes, it does.

> MR. SMITH: We would move into evidence at this time government's exhibit number 81-H.

> MR. COWEN: No objection.

> THE COURT: 81-H?

> MR. SMITH: H. And ask to publish it to the jury.

> Q. What was your response to seeing the gun in the defendant's home?

> A. I was frightened.

> Q. Why were you frightened?

> A. Well, first of all, he is -- he had been to prison for murder already, and I was kind of in pretty deep.  But I had no intentions on like really betraying him in any kind of way, so I just kind of tried to keep my composure.

4

Q. Did you have any other conversations with him that day in the back yard or anywhere else?

A. Yes.  We had a conversation about him going to prison.  He told me that he had been to prison for murder, and he explained to me how he got out, I guess.  I don't know if it was parole or whatever, but he said that he had mimicked the movie, "Shawshank Redemption", to the parole board. They went for it and they let him go.  He also told me that, you know, you know if you get caught, you know, doing this, we get caught, we don't tell.  And I was like, yeah, you know, sure. I was just trying to comfort him, you know, to let him know that I would not tell if I were to get caught.

Q. What happened after that?

A. Well, we had the conversation and I left.

[Trial Tr. at 120-21.]  In his closing argument, the prosecutor told the jury:

Now, why do you think he had that firearm out on display when Tiquila Turner came back from her trip from Jamaica?

Think about that.  She's delivering what? Brownies, cookies?

No.  She's delivering pellets that are in her body back to the man who had sent her down there.

And why would he have that gun out on display?

For her to see and to be intimidated to follow through on his conspiracy and to keep her mouth shut.

What does he say as soon as she sees the firearm?  They go out in the backyard, and what does he say to her?

5

> You know, if you get caught, we don't tell.  We don't tell names.
> And, Oh, by the way, I've done time for a murder conviction.

[*Id.* at 437-38.]  There were no other references to Movant's murder conviction at trial, and his rape charge was not mentioned.

Cowen did not object to Turner's testimony regarding Movant's murder conviction or the prosecutor's mention of it in closing arguments.  The Court did not give the jury a limiting instruction regarding Turner's testimony and did not instruct the jury on the law regarding evidence of prior bad acts.

The Court sentenced Movant to twenty years in prison and five years of supervised release.  [Doc. 244.]  Movant appealed, and his convictions and sentence were affirmed.  *United States v. Miller*, 387 Fed. Appx. 949 (11th Cir. July 21, 2010).

In his § 2255 motion, Movant asserts three grounds for relief:

1.   the Court erred in admitting evidence of his murder conviction and in not giving the jury a limiting instruction regarding that evidence;

2.   Cowen was ineffective at trial for neither objecting to Turner's testimony regarding Movant's murder conviction nor requesting a limiting instruction and was ineffective for not raising the issue on appeal; and

3.   his sentence for the cocaine crimes should be re-calculated based on the Fair Sentencing Act of 2010 and Amendment 750 to the U.S. Sentencing Guidelines.

[Doc. 278-1.]

6

## II.     The 28 U.S.C. § 2255 Standard

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

## III.     Analysis

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973).  As discussed below, the record in this case conclusively demonstrates that Movant's claims lack merit and that he is not entitled to relief under § 2255.

### A.     Ground One

Movant procedurally defaulted his claim that the Court erred by admitting

7

Turner's testimony about his murder conviction without a limiting instruction because he did not raise that issue on appeal. *See Miller*, 387 Fed. Appx. at 951 (listing the issues Movant raised on appeal). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a [] § 2255 challenge" unless the movant shows "both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error." *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004).

"[T]o show cause for procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented [him] . . . from raising his claims on direct appeal and that this factor cannot be fairly [attributed] to [his] own conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004). "Actual prejudice" requires a movant to show that the alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Reece v. United States*, 119 F.3d 1462, 1467 (11th Cir. 1997). A court also may review a claim in a § 2255 motion that was not raised on appeal if "a constitutional violation has probably resulted in the conviction of one who is actually innocent" and thus would result in a fundamental miscarriage of justice absent review. *Lynn*, 365 F.3d at 1234-35 (quotations omitted). "Actual innocence means factual innocence, not mere legal

8

innocence." *Id.* at 1235 n. 18 (quotations omitted).  In this regard, a § 2255 movant must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" not presented at trial.  *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

Movant argues in ground two of his § 2255 motion that Cowen was ineffective for not raising on appeal the evidentiary issue regarding his prior murder conviction, which the Court construes as his asserted reason for procedurally defaulting ground one.  Counsel's failure to preserve a claim for review on appeal may constitute cause for a procedural default, but "[n]ot just any deficiency in counsel's performance will do[.] . . .  [T]he assistance must have been so ineffective as to violate the Federal Constitution."  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  "In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim."  *Id.*

As discussed in Part III.B., below, the undersigned finds that Movant has not shown ineffective assistance of counsel.  Moreover, Movant does not argue that he is actually innocent, as a factual matter, of his crimes.  Thus, he has not overcome the procedural default of his claim that the Court erred by admitting evidence of his prior murder conviction at trial.  Movant is not entitled to relief on ground one of his motion.

9

B.   <u>Ground Two</u>

As discussed in Part I, above, the Court denied Movant's pre-trial motion in limine to exclude testimony from co-conspirator Turner about Movant's statement to her that he had been convicted of murder.  The Court ruled that such testimony was not hearsay and, thus, was admissible under Federal Rule of Evidence 801(d)(2).  Movant argues in his § 2255 motion that Cowen should have objected to the testimony as inadmissible under Federal Rules of Evidence 403 and 404(b) and asserted that argument on appeal.

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant.  *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).  As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc).  To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took.  *Id.* at 1315.

10

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

Movant has not shown that Cowen's failure to object to Turner's testimony about Movant's murder conviction, or to request a limiting instruction, and his failure to object to the prosecutor's reference to the murder conviction in closing arguments was constitutionally deficient performance. Nor has he shown that Cowen was deficient for failing to raise the issue on appeal.

First, Cowen filed a motion in limine to exclude any reference to or evidence of the murder conviction and competently argued the issue in a hearing one month before trial. [Docs. 124, 234.] At that hearing, after the prosecutor argued that Turner's testimony about Movant's statement to her would be admissible as non-hearsay, Cowen responded that the testimony still would be inadmissible under Rule 403. [Doc. 234 at 5 ("I agree it wouldn't be hearsay. I wouldn't agree that it's admissible . . . I would

11

argue Rule 403, that . . . it's particularly harmful . . . .").] Despite Cowen's arguments and efforts to exclude Turner's testimony about the murder conviction, the Court denied his motion in limine and ruled that the testimony was admissible.  [Doc. 145.] The undersigned cannot say that no objectively reasonable lawyer would have failed to raise the issue again after unsuccessfully presenting the relevant arguments orally and in writing.[3]

Second, it is not clear, as Movant suggests, that Turner's testimony about Movant's statement was inadmissible under Rule 403 or Rule 404(b) such that all reasonably competent lawyers would have objected to it at trial or raised the issue on appeal.  Rule 404(b) prohibits the admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," but allows such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).  Rule 403 prohibits the admission of evidence whose "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

---

[3]      Movant again raised the issue in his motion for judgment of acquittal or, in the alternative, for a new trial.  [Doc. 232 at 4, 8].  The Court denied that motion. [Doc. 261.]

12

waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Reading the two rules together, "[i]f the prior act evidence is relevant to an issue other

than the defendant's character, it may be admissible provided that the government

(1) has sufficient proof that the defendant committed the prior act, and (2) can show

that the probative value of the evidence is not substantially outweighed by its undue

prejudice, and meets the other requirements of Rule 403." *United States v. Baker*,

432 F.3d 1189, 1205 (11th Cir. 2005).

Turner testified that Movant told her he had been convicted of murder during a

conversation in which he was emphasizing the importance of her maintaining the

secrecy of the drug conspiracy and not "betraying him" if she was ever caught.

[Trial Tr. at 120-21.]  She testified that Movant initiated this conversation while

holding a gun and that the meeting frightened her, as he apparently intended.  [*Id.*] Her

testimony, and the prosecutor's reference to it in closing arguments, indicates that

Respondent offered Movant's admission of his murder conviction not as proof of his

propensity to commit crimes, but to prove that he was involved in the drug conspiracy

as its leader and the one who controlled its participants. *See United States v. Grajales-

Montoya*, 117 F.3d 356, 363-64 (8th Cir. 1997) ("[T]his testimony was offered not as

evidence of other crimes, but as evidence of the [defendants'] attempts to protect

themselves and to prolong the life of the conspiracy."). Movant's admission to Turner that he had been convicted of murder was sufficient proof of that act, and while Turner's testimony was prejudicial, it is not clear that the prejudice was "undue" and that it "substantially outweighed" the probative value of the evidence of Movant's extensive involvement in the drug conspiracy. *See* Fed. R. Evid. 403; *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) (observing that exclusion under Rule 403 is "an extraordinary remedy which the district court should invoke sparingly" and that "the balance . . . should be struck in favor of admissibility" (quotations omitted)).

Not only could a minimally competent lawyer have concluded that Turner's testimony was admissible under Rule 404(b), the testimony may not even have been subject to Rule 404(b). "[E]vidence of criminal activity other than the charged offense . . . falls outside the scope of [Rule 404(b)] when it is . . . necessary to complete the story of the crime, or [] inextricably intertwined with the evidence regarding the charged offense." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (quotations omitted). "This so-called 'res gestae' often arises during trials for conspiracies where the 'other crimes, wrongs, or acts' describe the co-conspirators' behavior within the scope and in furtherance of the charged conspiracy." *Baker*, 432 F.3d at 1205 n.9. While Movant's prior murder was not part of the drug

14

conspiracy, the evidence at issue – his statement to Turner that he had been convicted of murder – completed the story of how he ran and maintained the drug operation and described his behavior in furthering the purposes of the conspiracy.[4]  It therefore is reasonably debatable whether Turner's testimony on the issue was subject to Rule 404(b).  Movant has not satisfied his "heavy" burden of overcoming the "strong presumption" that Cowen's decisions not to object to Turner's testimony at trial on the basis of Rules 403 and 404(b) or to raise the issue on appeal were objectively reasonable.  *See Chandler*, 218 F.3d at 1314.

Even if Cowen's failure to object to Turner's testimony at trial, request a limiting instruction, or raise the evidentiary issue on appeal was constitutionally deficient performance, Movant has not shown a reasonable probability that, but for those failures, the result of his trial or appeal would have been different, i.e., that he was

---

[4]      Movant's reliance on *Old Chief v. United States*, 519 U.S. 172 (1997), is misplaced.  The issue in *Old Chief* was whether the trial court erred in not excluding under Rule 403 the full record of the defendant's prior criminal conviction where the defendant was charged with being a felon in possession of a firearm.  519 U.S. at 174.  The Supreme Court held that the evidence should have been excluded under Rule 403, but noted that its "holding is limited to cases involving proof of felon status," *id.* at 183 n.7, given the "peculiarities of the element of felony-convict status and of admissions and the like when used to prove it," *id.* at 191.  For cases where a defendant's convict status is not at issue, as here, evidence of a prior conviction that "creat[es] a coherent narrative of [the defendant's] thoughts and actions in perpetrating the offense for which he is being tried . . . will generally survive a Rule 403 analysis."  *Id.* at 191-92.

15

prejudiced.  Turner's reference to Movant's admission of his prior conviction in her testimony and the prosecutor's comment on it in his closing argument were both very brief.  The evidence of Movant's guilt was overwhelming and substantially outweighed those two isolated statements about his murder conviction.

As discussed in Part I, above, Respondent presented twenty-two witnesses at trial, several of whom were agents with various federal agencies that investigated Movant's drug operation.  Movant's co-conspirators, including some of the women he recruited into the operation to smuggle cocaine into this country, also testified.  The various witnesses detailed Movant's leadership of the drug operation, and their testimony was damning.  Numerous documents presented at trial corroborated the witnesses' testimony and served as independent proof of Movant's illegal activity. Moreover, the jury heard from (and saw) Movant himself in audio and video recorded conversations in which he made incriminating statements that led to the discovery of fruits of his crimes.  When Respondent rested its case, Movant presented no evidence in his defense.

In the face of the overwhelming evidence of his guilt, Movant has not shown a reasonable probability that the result of his trial or appeal would have been different without the two brief references to his murder conviction.  Thus, even assuming that

16

Cowen's performance at trial or on appeal was constitutionally deficient, Movant was not prejudiced. *See Baker*, 432 F.3d at 1224-29 (holding that erroneously admitted evidence of drug defendants' involvement in several murders and other violent acts was harmless given the substantial evidence of their participation in the drug conspiracy). Movant is not entitled to relief on ground two of his motion.

      B.    <u>Ground Three</u>

Movant seeks relief under the Fair Sentencing Act ("FSA"), which was enacted in 2010, and Amendment 750 to the U.S. Sentencing Guidelines (the "Guidelines"). The FSA "reduced the disparity between powder- and crack-cocaine offenses" by, in part, changing for federal sentencing purposes the crack-to-powder ratio from 100:1 to approximately 18:1. *United States v. Hudson*, No. 10-14428, 2011 WL 1810500, *2 (11th Cir. May 11, 2011); *see* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. The FSA does not apply retroactively to crimes committed before its effective date. *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010); *see Hudson*, 2011 WL 1810500, at *3 ("*Gomes* conclusively holds that the FSA is not retroactive to offenses that were committed before the effective date of the Act."). Because Movant committed his crimes (and was sentenced for them) prior to the FSA's effective date, the FSA provides no basis for relief from his sentence under § 2255.

17

The FSA directed the U.S. Sentencing Commission (the "Commission") to review and amend the Guidelines to effectuate the FSA's intent to reduce the disparity in federal sentences between crack and powder cocaine offenses. Fair Sentencing Act of 2010 §§ 7-8, 124 Stat. at 2374. In response, the Commission promulgated Amendment 750 to the Guidelines and recently voted to give that amendment retroactive effect on November 1, 2011 absent congressional action to the contrary. Sentencing Guidelines for the United States Courts, 76 Fed. Reg. 41332-01 (July 13, 2011). To the extent Amendment 750 might apply to Movant's sentence, the amendment is not yet applicable to sentences, like Movant's, that were imposed before the amendment was promulgated. *See id.*; *United States v. Hadley*, No. 6:06-cv-209-Orl-19DAB, 2011 WL 3235679, *2 (M.D. Fla. July 28, 2011) (holding that defendant's motion to reduce sentence was premature because "as of the date of this Order, Amendment 750 is not yet listed in § 1B1.10(c) of the Guidelines and does not provide a legal basis for resentencing Defendant"). Movant therefore cannot obtain relief from his sentence at this time based on Amendment 750.

Even if Amendment 750 provides a basis for relief from Movant's sentence when it takes effect on November 1, 2011 (assuming no contrary congressional action), 28 U.S.C. § 2255 is not the proper vehicle to obtain such relief. When the Commission

18

makes a Guidelines amendment that reduces a sentencing range retroactively applicable, "the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the [] Commission." 18 U.S.C. § 3582(c)(2). The proper method to seek such relief is via a motion to reduce sentence under § 3582(c)(2), not a motion under § 2255. *See id.*; *Wise v. United States*, No. 2:08cv17-MHT (WO), 2010 WL 653865, *6 (M.D. Ala. Feb. 19, 2010) (denying relief under § 2255 on claim based on retroactive amendment 706 to the Guidelines regarding crack cocaine). Movant may seek relief under 18 U.S.C. § 3582(c)(2) if Amendment 750 becomes retroactively applicable.

## IV.   Certificate of Appealability ("COA")

Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

19

encouragement to proceed further." *Slack v . McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and internal quotations omitted).

A COA is not warranted in this case.  The resolution of the grounds for relief in Movant's § 2255 motion is not reasonably debatable among jurists of reason. Accordingly, Movant has not made a substantial showing of the denial of a constitutional right and should be denied a COA.

## V.      Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate sentence, [Doc. 278], be **DENIED** and that Movant be **DENIED** a certificate of appealability.  Movant's motion for leave to file a late reply in support of his § 2255 motion, [Doc. 285], is **GRANTED** *nunc pro tunc*.

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO ORDERED AND RECOMMENDED**, this 30th day of September, 2011.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

20